UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>DANNY DEAN WHITE,<br><br>    Defendant. | Case No. 4:22-cr-00119-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Danny Dean White's Motion to Suppress. Dkt. 21. The Government filed a response. Dkt. 24. White did not reply. The matter is now ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001) (holding that evidentiary hearings on motions to suppress are only required if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist).

For reasons outlined below, the Court DENIES the Motion.

## II. BACKGROUND

In the early morning of July 28, 2021, Officers Luke Barela and Tyler Higbee of the Pocatello Police Department pulled over a red Volkswagen Jetta traveling without license plates. Barela approached the driver's window and communicated with the driver. Higbee went to the passenger's side and spoke with Danny Dean White. Higbee noticed that White was not wearing a seat belt and sweating profusely. When asked, White provided the officer with his name and date of birth. Overall, the initial contact was not more than three minutes in duration.

Once back to their patrol car, Barela asked dispatch if either of the occupants had outstanding warrants, while Higbee ran White's information through his computer. Through his search, Higbee learned that White had an unconfirmed warrant for his arrest, which dispatch verbally confirmed. At that point, Higbee told Barela to stop working on the citation so that they could arrest White.

Barela returned to the Jetta and placed White under arrest. After ordering White out of the car, Barela searched White's person and placed him in the back of the patrol car. Higbee also observed a silicon container near the passenger seat of the Jetta he believed may have contained controlled substances. Approximately at the same time as White's arrest, Barela requested a K9 unit, which arrived about ten minutes later.

Once the K9 unit arrived, officers asked the driver to step out, and the police dog performed a free-air sniff of the vehicle. The dog provided a positive alert, so officers searched the Jetta. They found and searched a duffel bag on the back seat containing

MEMORANDUM DECISION AND ORDER - 2

numerous firearms and a white crystalline substance. White later admitted the duffel bag was his. This substance was later determined to be methamphetamine.

A grand jury indicted White on May 24, 2022, on one count of Possession with Intent to Distribute a Controlled Substance. Dkt. 1.

In anticipation of trial, White filed the instant motion alleging officers unlawfully extended the traffic stop in violation of his Fourth Amendment rights and, as a result, the evidence later found should be excluded from trial. The Government opposes the Motion.

The Court recently set this matter for a hearing. *See* Dkt. 25. After reviewing the briefs, however, the Court has determined a hearing is not warranted. As part of this order, the Court will vacate the hearing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

### III. LEGAL STANDARD

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. The stop of a vehicle is a seizure of its occupants subject to the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996).

Under Supreme Court precedent, "the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (cleaned up). This is known as the "reasonable suspicion" standard. *Id.* at 1188. "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."

MEMORANDUM DECISION AND ORDER - 3

*Id.* at 1187 (cleaned up).

"Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (cleaned up). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Further, these inquiries fulfill states' vital interest in ensuring only qualified motorists are permitted to operate vehicles and that all traffic laws are observed. *Glover*, 140 S. Ct. at 1188 (cleaned up). But once a traffic stop is prolonged beyond the time reasonably required to issue a ticket, a traffic stop becomes unlawful. *Rodriguez*, 575 U.S. at 349.

When a motorist's vehicle is stopped, passengers are also necessarily seized and thus have standing to challenge the legality of the initial stop. *Brendlin v. California*, 551 U.S. 249, 257, 259 (2007). Procedurally, a defendant challenges a Fourth Amendment violation through a motion to suppress. A defendant "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (quoting *Rakas v. United States*, 439 U.S. 128, 131 n.1 (1978)). If the suppression motion is successful, the illegally seized evidence cannot be used at trial.

The Fourth Amendment provides "no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135, 139 (2009) (cleaned up). Still, Supreme Court caselaw carves out "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* "This

judicially created rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* at 139–40 (cleaned up).

The exclusionary rule is not automatic. Even though a Fourth Amendment violation might have occurred, it does not necessarily mean the rule applies. *Id.* at 140. It must have a deterrent effect, and "the benefits of deterrence must outweigh the costs." *Id.* at 141. For this reason, the exclusionary rule is most often applied when official conduct is flagrantly abusive of Fourth Amendment rights. *Id.* at 143.

Finally, a hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. *United States v. Kyle*, 565 F. App'x 672, 673 (9th Cir. 2014). "Rather, the defendant must demonstrate that a significant disputed factual issue exists such that a hearing is required." *Id.* (cleaned up). A district court's decision not to conduct an evidentiary hearing on a motion to suppress is reviewed under the abuse-of-discretion standard. *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012)

### IV. DISCUSSION

White's sole challenge to the constitutionality of the stop is that it was unlawfully extended in two ways. Dkt. 23, at 3. First, he alleges that Barela requested a K9 unit shortly after White was arrested. *Id.* Second, he argues Higbee told Barela to refrain from issuing a citation because of White's outstanding warrant. *Id.* Together or alone, White argues these events unlawfully extended the traffic stop. He is wrong.

While a dog sniff conducted after the completion of the traffic stop is per se unreasonable, a dog sniff conducted after a lawful arrest has taken place is not. *See Rodriguez*, 575 U.S. at 350; *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Likewise, it is

irrelevant that Higbee told Barela to stop issuing a citation to arrest White. In both of these instances, any delay was not unlawful because the officers were performing routine background checks and then detaining White pursuant to a valid warrant. Any delay was de minimis at best and the necessary result of police work. *See United States v. Bustamonte*, 2021 WL 861702, at *8 (D. Idaho Mar. 8, 2021) (finding that the officer "accurately performed his duties and what de minimis delay came as a result of those actions did not infringe on [Defendant's] rights.").

What's more, because these actions did not unlawfully prolong his detention, White has no standing to challenge the subsequent dog sniff and positive indication. *See United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000); *Rakas*, 439 U.S. at 134. Even though passengers can challenge the initial stop of a vehicle, despite having no possessory or ownership interest, passengers have no reasonable expectation of privacy to challenge a search of the car. *Twilley*, 22 F.3d at 1095 (cleaned up). White has failed to show that he was anything more than a temporary occupant of the Jetta, so he had no reasonable expectation of privacy allowing him to challenge the search.

## V. CONCLUSION

Ultimately, White has failed to identify any facts which, if proven, would allow the Court to grant his suppression motion, so an evidentiary hearing is not required. *Kyle*, F. App'x at 673. The undisputed facts also demonstrate that the officers made the stop based on reasonable suspicion arising from the illegal lack of license plates. Based on that reasonable suspicion, officers lawfully seized White as a passenger. The officers did not prolong the stop by requesting the occupants' identification, nor by running a warrant

check. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152–53 (9th Cir. 2007).

As soon as officers confirmed White's warrant, he was lawfully arrested. At that point, the officers' subsequent actions in no way unlawfully extended his initial detention. In all respects, the officers were constitutionally circumspect of White's Fourth Amendment rights. For this reason, the Court DENIES White's Motion to Suppress.

## VI. ORDER

THE COURT HEREBY ORDERS:

1. White's Motion to Suppress (Dkt. 21) is DENIED.
2. The hearing previously set (Dkt. 25) is VACATED.

DATED: February 2, 2023

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 7